

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:23cr40-001 |
| | ) | |
| JEREMY JOHN GLEASON, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

Comes now the United States and offers to the Court that had the above-styled matter proceeded to trial the United States would have proven the following facts beyond a reasonable doubt:

1. As early as May 1, 2020, JEREMY JOHN GLEASON was associating with known and unknown co-conspirators in Gloucester, Virginia, and began using and selling methamphetamine.

2. A confidential source (CS) told investigators that they knew individuals who were obtaining methamphetamine from GLEASON and that they had personally seen "ounces at a time", being four (4) ounces/quarter pound, in GLEASON's possession.

3. A CS told investigators that GLEASON became connected to an unindicted co-conspirator through co-conspirator 4 and that GLEASON, co-conspirators 3, and 4 were all going through the same "big sources" person to obtain their drugs.

4. A CS told investigators that they knew GLEASON for a long time and that they began to purchase methamphetamine from GLEASON. On their first meet with GLEASON, they purchased an "eighth" methamphetamine. The following time they purchased quarter pound of

methamphetamine. Their relationship continued and they bought a quarter ounce of methamphetamine from an unindicted co-conspirator who was working on behalf of GLEASON. The CS went on to purchase about a quarter ounce to half ounce of methamphetamine from GLEASON for about two weeks and then started purchasing ounces of methamphetamine daily from GLEASON.

5. The CS told investigators that GLEASON went "dry" due to his source of supply being impacted by COVID. The CS stated that GLEASON then tried to corner the methamphetamine market by buying everything.

6. GLEASON would get methamphetamine from other known and unknown co-conspirators for distribution who got larger quantities from known and unknown co-conspirators.

7. GLEASON normally purchased a quarter pound of methamphetamine every two days and then distributed it known and unknown co-conspirators.

8. On or about April 6, 2021, a controlled purchase was executed in Gloucester County. During this purchase GLEASON sold 14.2 grams of methamphetamine to a confidential informant.

9. On or about April 20, 2021, a controlled purchase was executed in Gloucester County. During this purchase GLEASON sold 14.7 grams of methamphetamine to a confidential informant.

10. Investigators estimate that well over 500 grams of methamphetamine was distributed during this conspiracy.

11. The acts taken by the defendant, JEREMY JOHN GLEASON, in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly and not by mistake or accident. The defendant acknowledges that the foregoing statement of facts covers the elements of the offense charged but does not describe all of the defendant's conduct

relating to the offenses charged in this case.

    12.    These events occurred in the Eastern District of Virginia.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Devon E.A. Heath, Peter G. Osyf
Assistant United States Attorneys

After consulting with my attorney, JEREMY JOHN GLEASON hereby stipulates that the above Statement of Facts is a partial summary which is true and accurate, and that, had the matter proceeded to trial, the United States would have proved these facts beyond a reasonable doubt.

_____
JEREMY JOHN GLEASON

I am JEREMY JOHN GLEASON's attorney and I have carefully reviewed the above Statement of Facts with the defendant. To our knowledge, the decision to stipulate to these facts is an informed and voluntary one.

_____
Jeffrey Lee Everhart, Esq.
Attorney for JEREMY JOHN GLEASON